2FED.CAS.—5

---

## Case No. 592.

### ASPINWALL'S CASE.

[3 Pa. Law J. 212, 380.]

Circuit Court, E. D. Pennsylvania. 1843.

BANKRUPTCY—VOLUNTARY ASSIGNMENT — RELEASES—PREFERRED CREDITORS.

Creditors who have executed releases according to the terms of voluntary assignments, are to be considered as having been preferred thereby over the creditors of the petitioner, who have not executed releases.

In bankruptcy.

BALDWIN, Circuit Justice. In the case of George W. Aspinwall, a petitioner for the benefit of the bankrupt act, on a point [see note at end of case] certified from the district court, it appeared that on the 1st March, 1841, the petitioner and David R. Pope his partner, made an assignment of all their joint and separate estate and effects, real and personal, in trust to pay certain of their creditors in full, and also to pay in full or rateably as the case might be. such of their creditors as should within a limited time execute and deliver an absolute release of all demands against the said Pope and Aspinwall, with a proviso to this effect, that all creditors who held collateral securities might retain them, and all the property thereby secured, and be at liberty to come in under the assignment for the balance due on their respective debts, after exhausing the property secured. The discharge of the petitioner was opposed on the ground of having made this assignment, whereupon the following question arose in the district court, which is now the subject of consideration, viz. Whether those creditors who have executed releases according to the terms of the assignment, are to be considered as having been preferred thereby over the creditors of the petitioner who have not executed releases. This question arises under the second enacting clause of the second section of the bankrupt act which prohibits the discharge of a petitioner who has by assignment or otherwise, after the 1st of January, 1841, or at any other time in contemplation of the passage of a bankrupt law, given or secured any preference to one creditor over another, without the assent of a majority in interest of the creditors who have not been so preferred. This assignment having been made after the 1st of January, 1841, comes

within the above provision as held in the Case of Irwine, [Case No. 7,086.] It gives preferences to certain creditors, and consequently the discharge of the petitioner is subject to the condition of assent by those creditors who have not been preferred, so that the only question· is, what is giving or securing a preference of one creditor over another according to the true interpretation of the bankrupt act?

Taken in its common acceptation, a preference of one over another is putting him in a better situation, giving him an advantage or benefit which others do not enjoy; whatever act tends to produce this effect is a preference—is within the law, no matter by what means it is done, whether by assignment "or otherwise," or what may be the mode of preferring. Any preference, of whatever nature or to whatever extent, imposes this condition on the petitioner. No exception is contained in the law, nor are any words used which can justify the implication of one which discriminates between the creditor who is preferred without any act to be done by him after the assignment, or other act giving the preference, and the creditor who by its terms must do something before the preference can attach. The leading policy of the whole bankrupt act, is to enforce the equal distribution of a bankrupt's property among all his creditors, and to prevent all preferences of any creditors over others. not only after the passage of the act, but from the express words of the law the same spirit is directed to all preferences after the 1st of January preceding, or even before if made in contemplation of the passage of a bankrupt act. When the intention of the legislature is so clearly manifested, it ought to be carried into effect in the same spirit; every creditor has a legal right to resort to the property of a debtor for the payment of his debt, without any obligation to submit to any terms or conditions sought to be imposed on him. If the debtor makes such an assignment of his property as to make a release by his creditors a condition of his being entitled to any part of the debtor's property, he is forced to surrender his right, or be cut out of any hope of payment; this of itself puts those creditors who release in a better position than those who do not; it divides the creditors into two classes, one of whom may be paid in full, while the other receives nothing. When paid in full, the giving a receipt or release of the debt is a duty of the creditor, independent of the assignment; no right is given up by the release, and if paid only in part, the releasing creditors will have first exhausted the whole fund, leaving to the others no right or remedy but to pursue the person of the debtor, both of which are under the laws of the state and the late act of congress, difficult if not impossible to enforce, and will be wholly abrogated if the construction relied upon by the petitioner prevails. As the law does not invalidate the assignment, or other act which gives the preference, no vestige remains either of right or remedy in the creditors who do not release, other than the right to oppose the discharge of the bankrupt without the consent of a majority in interest. And even this poor remnant of a creditor's right will be taken from him, if the releasing creditors constitute a majority in interest by themselves, or by the addition of others, and give their assent to the discharge. So to construe the law would be to annul it, for the creditors who have released the debtor have no interest in his discharge. They cannot prove their debts under the bankruptcy, for none exist. They cannot oppose the discharge, for it cannot affect them, nor do or can they in any sense fill the character of creditors after they have absolutely released the debt. This consideration alone would be conclusive to show the true meaning of the law to be, that when a preference of one creditor over another has been given or secured as in this case, the petitioner cannot be discharged without the assent of a majority in interest of those creditors who have not executed releases, and whose debts are existing and unpaid, at the time of the hearing of the petition for a discharge. In ascertaining whether a preference has been given, the act looks to the time when it purports to have been given, and to those who are then creditors; but the discharge must be referred to the final hearing, and none can be recognized as creditors to whom the bankrupt is not then indebted. The question adjourned to this court, must therefore be answered in the affirmative.

NOTE, [from 3 Pa. Law J. 380.] "The opinion of the late Judge Baldwin is given without any statement; and as the question · certified to the court is not precisely stated in the opinion, we have examined the record, and give below the question in terms as certified by the district court, and some facts which may serve to prevent any misunderstanding of the decision. The report of the commissioner shows the amount of debts of unpreferred creditors to be $258,732.60, of whom those holding debts amounting to $147,911.05 assented to the discharge. But of these the larger portion though not preferred, had released the petitioner in accordance with the terms of the assignment, which stipulated that all who released within a certain time should be paid pro rata. It was objected that the creditors who had released in accordance with the terms of the assignment, were preferred over those who had not released. The question was thus certified by the judge of the district court: Are the creditors who executed the release stipulated for in the assignment of G. W. A., a copy of which is annexed to the petition. creditors 'not preferred,' within the meaning of the second proviso of the second section of the bankrupt law?

"The decision of the circuit court was, that the releasing creditors were preferred within the meaning. &c. The answer of the circuit court should be in the negative, as it is evident from the course of argument in the opinion, and the manner in which the question is therein stated, that it was understood affirmatively by the circuit court."